IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01939-MJW

THE ROYBAL CORPORATION; and RONALD ROYBAL and MICHAEL ROYBAL as owners of The Roybal Corporation,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER SCHOOL DISTRICT NO. 1, in the State of Colorado; and CITY AND COUNTY OF DENVER SCHOOL DISTRICT NO. 1 BOARD OF EDUCATION,

    Defendants.

---

## MOTION TO DISMISS COMPLAINT
---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants City and County of Denver School District No. 1 (the "District") and City and County of Denver School District No. 1 Board of Education (the "Board") hereby move to dismiss the Complaint filed by Plaintiffs the Roybal Corporation, Ronald Roybal, and Michael Roybal, as follows.

### INTRODUCTION

Ronald and Michael Roybal own the Roybal Corporation, an architectural firm. In 2015 and 2016, the Roybal Corporation submitted bid proposals for two competitively bid Requests for Proposals issued by the District for architectural and design services for: (1) additions, remodeling and improvements to Swansea Elementary School (the "Swansea RFP"), and (2) the construction of a new school building in east Denver (the "CP Bedrock RFP"). After evaluating the bid proposals, the District awarded the RFPs to the highest scoring companies, Anderson Mason Dale Architects for the Swansea RFP and MOA Architecture for the CP Bedrock RFP.

Plaintiffs bring discrimination and retaliation claims against the District under 42 U.S.C. §§ 1981 and 1983 for not awarding the RFPs to the Roybal Corporation. Plaintiffs allege that the District intentionally discriminated against Michael and Ronald Roybal based on their national origin (Hispanic) by failing to award the RFPs to the Roybal Corporation. Plaintiffs also allege that the District did not award the RFPs to the Roybal Corporation in retaliation for public comments made by Michael and Ronald Roybal regarding the District's contracting practices. Defendants seek dismissal of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## **RELEVANT FACTS**

For purposes of this Motion, Defendants take the following facts as true:

1. The Roybal Corporation is a Colorado corporation. (Docket No. 1, Compl. ¶ 4.)

2. The Roybal Corporation is an architectural firm owned by Michael and Ronald Roybal. (*Id.*)

3. Michael and Ronald Roybal are of Hispanic origin. (*Id.* ¶¶ 5-6.)

4. The District is a Colorado public school district. (*Id.* ¶ 7.)

5. The Board is a Colorado public school district board of education. (*Id.* ¶ 8.)

6. In May 2015, the Roybal Corporation developed the Master Plan for the Swansea Elementary School renovation project. (*Id.* ¶ 73.)

7. On June 26, 2015, the District issued the Swansea RFP (RFP 15-BS-2552) for the renovation of Swansea Elementary School. (*Id.* ¶ 71.)

8. The Roybal Corporation submitted a bid proposal for the Swansea RFP. (*Id.* ¶ 74.)

9. As part of the bid proposal process, bidders were required to develop a diverse

business outreach plan that accounted for twenty-five (25) points in the overall evaluation criteria.  (*Id.* ¶ 75, 87.)

10.     The District awarded the Swansea RFP to Anderson Mason Dale Architects ("AMD").  (*Id.* ¶ 83.)

11.     Only 1.64 points separated AMD's final score from the Roybal Corporation's final score.  (*Id.*)

12.     Regarding the points awarded for the diverse business outreach plan component of the evaluation criteria, the Roybal Corporation received 24.5 points and AMD received 17.5 points.  (*Id.* ¶ 87.)

13.     On December 13, 2015, the District issued RFP 16-BS-AE2601 (the "CP Bedrock RFP").  (*Id.* ¶ 90.)

14.     The Roybal Corporation submitted a bid for the CP Bedrock RFP.  (*Id.* ¶ 91.)

15.     The District did not award the CP Bedrock RFP to the Roybal Corporation.  (*Id.* ¶ 92.)

16.     The Roybal Corporation had decades of experience as architects.  (*Id.* ¶ 92.)

17.     The Roybal Corporation was qualified for the Swansea and CP Bedrock RFPs.  (*Id.* ¶¶ 97, 102, 120.)

## LEGAL STANDARD

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party."  *Havens v. Johnson*, 2012 WL 871195, at *3 (D. Colo. March 13, 2012), (*citing Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th

Cir. 2001)). "With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as 'facial plausibility.' In this context, 'plausibility' refers to the scope and degree of specificity of the allegations in the complaint." *Id.* (*citing Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012)). "In this regard, the plaintiff must do more than articulate a set of facts that could 'conceivabl[y]' or 'possibly' give rise to a claim; he must 'nudge[] his claims across the line from conceivable to plausible.'" *Id.* Conclusory allegations need not be considered. *Id.*

## ANALYSIS

**I. Plaintiffs' Claims for Discrimination and Retaliation Under 42 U.S.C. § 1981 Must Be Dismissed Because Plaintiffs Do Not Have Cognizable Claims Against Defendants Under § 1981.**

Plaintiffs seek relief, including damages, for national origin discrimination and retaliation under 42 U.S.C. § 1981. (Compl. First Cause of Action, ¶¶ 94-98, Second Cause of Action, ¶¶ 99-104.) However, Plaintiffs do not have cognizable claims against Defendants under § 1981 because Defendants are public entities. *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("[D]amages claims against state actors for § 1981 violations must be brought under § 1983."); *see also Hannah v. Cowlishaw*, 628 F. App'x 629, 632-33 (10th Cir. 2016) ("§ 1981 does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors" and when such claims are asserted, they should be dismissed) (unpublished). When a plaintiff brings claims under § 1981 against public entities, the claims should be dismissed because "[w]ithout an available remedy, [a plaintiff's] Complaint 'fails to state a claim upon which relief can be granted.'" *Rodriquez v. Boulder Cty. Pub. Health*, 2012 WL 1019171, at *3 (D. Colo. Mar. 9, 2012) (unpublished).

4

Plaintiffs' First and Second Causes of Action are brought against the Defendants solely under § 1981. (Compl. pp. 15-16.) The District is a public school district and the Board is a public school district board of education. (*Id*. ¶¶ 7-8.) Plaintiffs do not have viable claims against Defendants under § 1981 because Defendants are public entities. Thus, even if the allegations in the Complaint are taken as true and viewed in the light most favorable to Plaintiffs, the First and Second Causes of Action for discrimination and retaliation under § 1981 must be dismissed for failure to state claims upon which relief can be granted.

## II.   Plaintiffs' Claims for Retaliation Have Not Been Recognized in This Jurisdiction and Should Be Dismissed.

Plaintiffs bring claims for retaliation based on free speech under 42 U.S.C. §§ 1981 and 1983. (Compl. ¶¶ 99-104, 107-108, 116-124.) Plaintiffs allege that the District did not award the Swansea and CP Bedrock RFPs to the Royal Corporation in retaliation for Plaintiffs' public comments regarding the District's allegedly discriminatory contracting practices. (*Id*. ¶¶ 101-102, 117-120.) Plaintiffs frame these claims separately, one under 42 U.S.C. § 1981, and the other under 42 U.S.C. § 1983, but as established above in section I, Plaintiffs do not have a viable claim for retaliation under § 1981. In any event, regardless of whether Plaintiffs' retaliation claims are brought under § 1981 and/or § 1983, they should be dismissed.

As mere bidders for new public contracts, Plaintiffs' claims for retaliation have not been recognized in this jurisdiction and are subject to dismissal. Under United States Supreme Court precedent in *Board of County Commissioners, Wabaunsee County v. Umbehr*, it is clearly established law that contractors with a pre-existing relationship with a governmental contracting authority have a right not to be retaliated against for protected activity including the exercise of free speech. 518 U.S. 668, 685 (1996) (independent contractors are protected from the

"termination of a pre-existing commercial relationship with the government" for exercising their First Amendment rights); *see also Glover v. Mabrey*, 384 F. App'x 763, 769 (10th Cir. 2010) (citing *Umbehr* for holding that plaintiff contractor had a cognizable claim for free speech "retaliation … based on its criticism of the contracting government agency" when public agency revoked plaintiff's prequalification status) (unpublished).  However, in *Umbehr*, the United States Supreme Court expressly disavowed deciding the "possibility of suits by bidders or applicants for new government contracts who cannot rely on [a preexisting contractual] relationship." 518 U.S. at 685.

The Tenth Circuit has not addressed this issue, and the circuit courts that have addressed it are split.  In *McClintock v. Eichelberger*, the Third Circuit held that bidders for new government contracts do not have a cognizable claim for retaliation based on freedom of speech. 169 F.3d 812, 817 (3d Cir. 1999) ("[p]rotection of an independent contractor with a pre-existing commercial relationship with the public entity from retaliation by reason of his political activity plainly protects his First Amendment rights" which is "unlike the [situation] here" involving a bidder for a new government contract).  In *McClintock*, the plaintiff marketing company submitted a proposal to perform marketing services for the Southern Alleghenies Planning and Development Commission (the "Development Commission"), a public entity.  *Id*. at 813-14. The contract for the marketing services went to another company and plaintiff brought claims arguing that the contract was not awarded to plaintiff in retaliation for plaintiff supporting public officials of whom the commissioners of the Development Commission opposed.  *Id*. at 814.  The Third Circuit held that under *Umbehr* and other relevant case law, plaintiff did not have a cognizable claim for retaliation.  *Id*. at 816-17.

The court in *McClintock* reasoned that in *Umbehr* the Supreme Court "emphasize[d] the limited nature of [its] decision" and "carefully cabined" it. *Id*. at 817. Further, the court "cautioned against extending First Amendment holdings if they would cause the judiciary to 'intrude itself into such traditional practices as contract awards by the government[] … be it on a federal, state or local level.'" *Id.; see also A.A.A. Always Open Bail Bonds, Inc. v. DeKalb Cty., Ga.*, 2006 WL 5440395, at *10 (N.D. Ga. Aug. 4, 2006) ("As was the Third Circuit, the Court is hesitant to extend *Umbehr's* protection when the Supreme Court explicitly limited this protection to cases with preexisting commercial relationships…."). The court noted that the plaintiff was not like the one in *Umbehr* and similar cases that involved "trash hauling and motor vehicle towing" that are "municipal services of an ongoing character." *Id*. at 815-16 (*citing Umbehr* and *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996)). The court also noted that "retaliation in a situation involving ongoing contracts obviously presents a clear set of dynamics" whereas "it is difficult for a court to predict what the consequences would be on political activity if the First Amendment protections are extended beyond the *Umbehr* … boundaries." *Id*. at 817.

In contrast to *McClintock*, in *Oscar Renda Contracting, Inc. v. City of Lubbock*, the court held *Umbehr* extended to bidders for new public contracts reasoning that under United States Supreme Court precedent, job applicants are protected if an application is rejected in retaliation for protected speech, and by extension, bidders for public contracts should be protected as well. 463 F.3d 378, 385 (5th Cir. 2006) (*citing Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990)); *see also Webster v. Fulton Cty., Ga.*, 282 F.3d 1254 1257 (11th Cir. 2002) (while free speech retaliation claim based only on § 1983 for bidder on new government contract may not be cognizable under *Umbehr*, that case did not address same claim under § 1981 as enforced by

7

§ 1983, and such a claim under § 1981 as enforced by § 1983 is cognizable).

Here, Plaintiffs are mere bidders for new public contracts, the Swansea and CP Bedrock RFPs. (Compl. ¶¶ 71, 74, 90-91.) Plaintiffs did not have any pre-existing rights in these competitively bid RFPs and these RFPs do not concern ongoing District services, but are project specific RFPs. Thus, the Plaintiffs are similar to the plaintiffs in the *McClintock* case, and are squarely within the *Umbehr* court's express disavowal of deciding the viability of suits by bidders for new government contracts. Defendants request that the Court follow the prudent approach taken by the Third Circuit in not extending *Umbehr* to mere bidders for new government contracts, and dismiss Plaintiffs' retaliation claims for failure to state claims upon which relief can be granted.

### III. Plaintiffs' Claims for Discrimination Should Be Dismissed Because Plaintiffs Fail to Plead a *Prima Facie* Case of Discrimination.

Plaintiffs bring claims of national origin discrimination under 42 U.S.C. §§ 1981 and 1983. (Compl. ¶¶ 94-98, 105-115.) Plaintiffs allege that the District intentionally discriminated against them based on the Roybals' Hispanic origin by not awarding the Swansea and CP Bedrock RFPs to the Roybal Corporation. (*Id*. ¶¶ 97, 106-107, 114.) Plaintiffs bring their discrimination claims separately under §§ 1981 and 1983, but as stated above in section I, the § 1981 claim for discrimination must be dismissed because Defendants are public entities. In any event, even if Plaintiff had cognizable discrimination claims under § 1981 and § 1983 separately, the claims would be analyzed using the same standard. *Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005) ("[I]n racial discrimination suits, the elements of a plaintiff's case are the same ... whether that case is brought under §§ 1981 or 1983….").

This jurisdiction has not adopted a standard for analyzing a bidder's claim for

8

discrimination for failure to award a competitively bid contract. Two differing standards have been used in other federal jurisdictions. In *T&S Service Associates, Inc. v. Crenson*, the First Circuit held that in the context of a racial discrimination claim for the failure to award a competitively bid public contract, the "*McDonnell Douglas* principles are applicable." 666 F.2d 722, 724 (1st Cir. 1981) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* methodology, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Id*. If the plaintiff does not establish a *prima facie* case, the claim fails. *Id*. The court analyzed the typical *prima facie* elements of a discrimination claim in the employment context and determined that the "elements of a *prima facie* case of discrimination in the context of a public bidding decision necessarily differ from the elements" in the context of hiring for employment. *Id*. at 725 & n.3. The court stated:

> A public bid offering, unlike the usual employment decision, typically finds the employer seeking only a single contractor out of a rather limited pool of companies which submit proposals. When the employer selects a bid, his search ends. In addition, the very concrete element of price plays a large role in the selection process-and this is a factor controlled by the contractor…. If the minority firm's bid is no more qualified than the accepted bid and offers no price or other significant advantages to the employer, then the employer's decision to reject the minority bid would not create an inference of discrimination.

*Id*.

Accordingly, the *T&S* court held that to establish a *prima facie* case of discrimination in contract bidding, the plaintiff must show: (1) that it is a minority-owned company; (2) its bid met the specifications required for the bid; (3) its bid was "significantly more advantageous" to the contracting entity than the winning bid; and (4) another contractor was selected. *Id*.

In *Brown v. American Honda Motor, Co.*, the Eleventh Circuit adopted a different approach to the elements required for a *prima facie* case of discrimination in the contract bidding

9

context. 939 F.2d 946, 949 (11th Cir. 1991). In *Brown*, the court held that, like in *T&S*, in a contract bid context, the *McDonnell Douglas* methodology applies with the plaintiff first having to establish a *prima facie* case of discrimination. *Id*. The *Brown* court held that the elements of a *prima facie* case are: (1) plaintiff is a member of a minority group; (2) plaintiff submitted a bid which met the requirements for an available contract; and (3) plaintiff's bid was rejected and the contract was given to an individual who is not a member of a protected class. *Id*. The *Brown* standard represents a lower standard than the *T&S* standard because it does not require the plaintiff to establish that its bid was "significantly more advantageous" than the winning bid.

The Tenth Circuit addressed the differing approaches to the *prima facie* elements in an unpublished opinion but expressly refused to adopt one approach or the other. *See Black Educ. Network, Inc. v. AT&T Broadband, LLC*, 154 F. App'x 33, 39 & n.4 (10th Cir. 2005) (the "Third and Eleventh Circuits disagree on the precise elements that must be proven in order to establish a *prima facie* case of discrimination in a bidding situation. We conclude it is unnecessary in this case to definitively decide those elements."). Defendants request that the Court adopt the standard used by the Third Circuit in *T&S*. As the *T&S* court explained, the public bidding context is fundamentally different than the employment context and modification to the *prima facie* elements is required. 666 F.2d at 725. Further, as the *T&S* court noted, when a plaintiff's bid offers no significant advantage to the contracting entity, the entity's decision to reject the bid and award the bid to another company does "not create an inference of discrimination." *Id*. Thus, the Court should apply the standard used in the Third Circuit and require Plaintiffs to establish that the bids submitted by the Roybal Corporation for the Swansea and CP Bedrock RFPS were "significantly more advantageous" to the District than the winning bids in order to

establish a *prima facie* case of discrimination.

Under the *T&S* standard, Plaintiffs' claims should be dismissed because the allegations in the Complaint, even if taken as true and in the light most favorable to Plaintiffs, do not establish that the bids submitted by the Roybal Corporation for the Swansea and CP Bedrock RFPs were significantly more advantageous to the District than the winning bids.  As for the CP Bedrock RFP, Plaintiffs' allegations are sparse, but at most allege that they had "decades … of experience" and were "otherwise qualified."  (Compl. ¶¶ 92, 97, 102, 120.)  As for the Swansea RFP, Plaintiffs even admit that "[o]nly 1.64 points separated AMD's score from Plaintiffs."  (*Id.* ¶ 83.)  The most Plaintiffs allege regarding the Swansea RFP is that they completed the master plan for the project (*id.* ¶ 73), scored higher under the diverse business outreach component of the overall evaluation criteria (*id.* ¶ 87), and were "otherwise qualified."  (*Id.* ¶¶ 97, 102, 120.)  Importantly, Plaintiffs do not allege that their bid proposal was significantly more advantageous to the District relative to AMD's winning bid.  Plaintiffs "must do more than articulate a set of facts that could 'conceivabl[y]' or 'possibly' give rise to a claim; [they] must 'nudge[] [their] claims across the line from conceivable to plausible.'"  *Havens*, 2012 WL 871195, at *4 (*citing Khalik*, 671 F.3d 1188).  Plaintiffs fail to articulate a set of facts establishing the bid proposals submitted by the Roybal Corporation for the Swansea and CP Bedrock RFPs were significantly more advantageous to the District than the winning bids, and thus, Plaintiffs' discrimination claims should be dismissed for failure to state claims upon which relief can be granted.

## CONCLUSION

Based on the foregoing, Defendants request that the Court issue an order dismissing Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

RESPECTFULLY SUBMITTED this 3rd day of October, 2016.

                SEMPLE, FARRINGTON & EVERALL, P.C.

                By: *s/ Daniel P. Spivey*
                M. Brent Case
                Jonathan Fero
                Daniel P. Spivey
                1120 Lincoln Street, Suite 1308
                Denver, CO 80203
                (303)595-0941
                bcase@semplelaw.com
                jfero@semplelaw.com
                dspivey@semplelaw.com

                Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2016, a true and correct copy of the foregoing **MOTION TO DISMISS COMPLAINT** was served electronically via CM/ECF on the following:

Joseph A. Salazar, Esq.
Smith Shellenberger & Salazar, LLC
14694 Orchard Parkway, Suite 210
Westminster, CO 80023

*/s Brenda Westra*